## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| **MIRANDA W.[1]**, | Case No. 3:19-cv-1462-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Laurie B. Mapes, P.O. Box 1241, Scappoose, OR 97056. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Miranda W. ("Plaintiff") seeks judicial review of the final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying her application for disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

insurance benefits ("DIB"). Plaintiff argues that the Administrative Law Judge ("ALJ") committed harmful legal error in deciding her case and that the Court should remand for calculation of benefits. The Commissioner responds that the ALJ committed no legal error. For the reasons stated below, the Court remands for a finding of disability and the immediate calculation and payment of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins*, 466 F.3d at 882 (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground on which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB on August 12, 2016, alleging disability beginning July 19, 2014. AR 15. Born on August 21, 1977, Plaintiff was 38 years old as of the alleged disability onset. AR 242. The agency denied her claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 176, 182, 185. Plaintiff appeared for a hearing before an ALJ in July 2018. AR 37-72. In August 2018, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 12-31. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied in July 2019. AR 1. Accordingly, the ALJ's decision became the final decision of the agency, and Plaintiff seeks judicial review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant can perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security

Act ("Act") through September 30, 2019 and proceeded to the sequential analysis. AR 18. At

step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

July 19, 2014, the date of the alleged disability onset. *Id.* At step two, the ALJ determined that

Plaintiff suffered from the following severe impairments: bipolar disorder, depression, anxiety,

attention deficit disorder ("ADD") and post-traumatic stress disorder ("PTSD"). *Id.* At step three,

the ALJ found that none of Plaintiff's impairments met or equaled the severity of a listed

impairment. AR 19. Between step three and step four, the ALJ formulated Plaintiff's RFC. The

ALJ determined that Plaintiff could

> perform a full range of work at all exertional levels but with the
> following nonexertional limitations: [Plaintiff] can occasionally
> interact with coworkers but tasks should be completed
> independently. [Plaintiff] can have occasional and incidental
> contact with the public.

AR 20. At step four, the ALJ found that Plaintiff could not perform any of her past relevant

work. AR 29. At step five the ALJ found that "there are other jobs that exist in significant

numbers in the national economy that [Plaintiff] also can perform." AR 30. Thus, the ALJ

concluded that Plaintiff is not disabled.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly rejecting Plaintiff's subjective

symptom testimony; (2) improperly rejecting the treating medical source opinion of Dr. Landon

Michaels, (3) improperly discounting the medical source opinions of three non-acceptable

medical sources; (4) failing to give proper weight to lay witness statements; and (5) omitting any

discussion in the RFC of Plaintiff's use of a service dog. Because issues (1) and (2) are

dispositive, the Court need not address issues (3)-(5). The Court identifies the ALJ's material

legal errors and explains why remand for immediate payment of benefits is appropriate.

### A.  Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of

his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017). There is a two-step

process for evaluating a claimant's testimony about the severity and limiting effect of the

claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).[2] "First, the ALJ

must determine whether the claimant has presented objective medical evidence of an underlying

impairment 'which could reasonably be expected to produce the pain or other symptoms

alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.

Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not

show that her impairment could reasonably be expected to cause the severity of the symptom she

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by
SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy.
SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166
(Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in
this Opinion and Order.

has alleged; she need only show that it could reasonably have caused some degree of the

symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's

character," and requires the ALJ to consider all the evidence in an individual's record when

evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case

record, including the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case

record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's

statements made to the Commissioner, medical providers, and others regarding the claimant's

location, frequency and duration of symptoms, the impact of the symptoms on daily living

activities, factors that precipitate and aggravate symptoms, medications and treatments used, and

other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical

reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at \*6-7.

Plaintiff reported a litany of severe psychological symptoms, including dissociation, head banging and self-cutting, hypervigilance, difficulty with sustained focus, concentration and memory, angry outbursts, unpredictable triggering of PTSD symptoms, aggressive or otherwise inappropriate social behavior, and difficulty being around people. AR 366-73, 418-426. She has trouble preparing her own meals and needs to set an alarm reminding her to eat and to take her medication. AR 54. She reported that her attention span is "usually only good for about 30 minutes" before she gets lost and begins to dissociate. *Id.*

Plaintiff also stated that she has tried her best to lead a normal life but that her symptoms have severely limited her. She tried to attend community college but had to drop all but one of her classes due to her psychological symptoms. AR 46. She takes the remaining class online and was last on campus in 2017. AR 21. She received extra support from the school—for example, she could leave class for breaks as needed. *Id.* But she still suffered emotional meltdowns in class and episodes of self-harm while on campus. AR 58. She continues to receive special accommodations for her single online class. She gets her assignments in audio format because of her poor memory. AR 55. One of her friends, an educator, helps her keep track of deadlines and reads her tests to her. AR 58. When she is overwhelmed, she bangs her head against the wall, causing concussions. AR 22. She briefly worked a delivery job but had to give it up because the traffic triggered her panic attacks. AR 57. Although Plaintiff founded a charity for the pets of

unhoused people and intermittently pet sits, her symptoms limit these activities too. She

sometimes would have to leave the houses of her pet sitting clients because she would panic and

need to return to her own home. AR 59. Plaintiff had to step back from her nonprofit when she

started taking classes because she could not handle both activities. AR 49. She reported that

other volunteers "go and be there to give out information and also pet food" and that her friend

handles updating the nonprofit's Facebook page. AR 50-51.

Plaintiff acknowledged the cyclical nature of her symptoms: she can have "good days,"

but even a good day can quickly deteriorate from a PTSD trigger such as "a song, a smell, a

neighborhood I drive by, a conversation with someone around my age," or some other

unexpected source. AR 60. She reported that she can sometimes temporarily stop self-harming,

but that after a month she starts picking at her skin, eventually escalating to cutting herself with

cuticle scissors or kitchen knives. *Id.* At the administrative hearing, although Plaintiff was at first

able to respond to the ALJ's questions, Plaintiff ultimately had to leave the hearing and did not

return. AR 69.

The ALJ concluded that Plaintiff's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms," thereby satisfying step one of the

framework. AR 22. The ALJ, however, determined that Plaintiff's "statements concerning the

intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the

medical evidence and other evidence in the record." *Id.*

The ALJ summarized Plaintiff's testimony and recited the medical evidence in the

record. AR 22-25. But the ALJ did not specify "which . . . testimony is not credible and what

evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. He did not explain

which portions of the medical record conflicted with which portions of Plaintiff's subjective

symptom testimony. The ALJ recounted much medical record evidence, but he did not use that evidence to evaluate Plaintiff's subjective symptom testimony. This was legal error. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (finding that general rejection of claimant's testimony was insufficient and that ALJ committed legal error when she did not specify what testimony she rejected and why); *Treichler v. Comm'r*, 775 F.3d 1090, 1102-03 (9th Cir. 2014) ("The ALJ did not . . . specifically identify the testimony he found not credible. . . . This was error and falls short of meeting the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse determination is based."); *Loring v. Astrue*, 2011 WL 6888838, at *3 (D. Or. Dec. 29, 2011) (noting "clear, repeated, and unambiguous Ninth Circuit precedent stating that 'the ALJ must specifically identify the testimony she or he finds not to be credible[.]'" (quoting *Holohan*, 246 F.3d at 1208);  That error alone is reason enough to remand this case.

But even if the ALJ had identified which portions of Plaintiff's testimony he found not credible, the reasons he provided for rejecting Plaintiff's subjective symptom testimony were legally insufficient. The ALJ provided four reasons to justify rejecting Plaintiff's testimony. None of them are clear and convincing.

### 1. Absence of Psychiatric Hospitalizations and Suicide Attempts

Lack of psychiatric hospitalizations or recent suicide attempts is not a clear and convincing reason to reject Plaintiff's subjective symptom testimony. The ALJ is mistaken that Plaintiff has never attempted suicide. The record shows that she attempted suicide at least once in 2008. AR 641. She reported attempting suicide again in July 2014, after which she was hospitalized. AR 624. The record also shows that Plaintiff sought emergency psychiatric care at least one in April 2014, leading to a two-day hospitalization. AR 496-511.

The ALJ also erred on the law. When a plaintiff has received mental health treatment, courts often reject a lack of psychiatric hospitalization as a clear and convincing reason to reject a claimant's subjective symptom testimony. *See, e.g.*, *Morales v. Berryhill*, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017) ("[T]hat plaintiff was not psychiatrically hospitalized does not mean that he did not have a mental health impairment that prevented him from working."); *Finn v. Astrue*, 2013 WL 501661, at *5 (C.D. Cal. Feb. 7, 2013) ("[T]he conclusion that the opined mental limitations are not supported because Plaintiff was not hospitalized for mental health treatment is unfounded.").

Further, Plaintiff has received regular mental health treatment. She has taken various medications since 2010, she attended weekly group and individual therapy with Dr. Michaels from 2015 to 2017, and she received psychotherapy on a weekly basis both before and after her treatment with Dr. Michaels. AR 640, AR 1668, AR 1722. Thus, the ALJ's decision is not supported by substantial evidence.

### 2. Improvement with Treatment and Medication

"The fact that a person suffering from depression makes some improvement 'does not mean that the person's impairment [] no longer seriously affect[s] [his] ability to function in a workplace.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Dr. Michaels observed this phenomenon in Plaintiff—he saw Plaintiff "experience periods of improvement followed by substantial decompensation." AR 1668. He ultimately opined that Plaintiff's periods of improvement were too infrequent and her periods of decompensation too debilitating for her to hold a full-time job. AR 1669. Plaintiff recognized the cyclical nature of her illness in her own testimony—she testified that she has some "good days" but that even a good day could deteriorate quickly if she was triggered by a song or a smell. AR 60. Plaintiff's medical record also reflects the up and down nature of her illness.

In September 2016, Plaintiff's doctor noted that she was "doing well with her medications" and observed Plaintiff to have normal mood, affect and behavior. AR 23, 686. But by December, Plaintiff again reported suicidal ideation. AR 743. In January 2017, Plaintiff reported three dissociative episodes in one month and an increase in self-harming behavior. AR 961. Soon after, she suffered a concussion from bashing her head into a desk. AR 1559. As of November 2017, Plaintiff still presented with "cognitive-communications dysfunction consistent with post-concussion syndrome including light sensitivity, irritability, decreased concentration, and decreased memory." AR 25. Even in April 2018, one of Plaintiff's therapists continued to observe Plaintiff "quickly go from regulated to dysregulated." AR 1720-21. In addition, although Plaintiff was initially able to testify at the administrative hearing, she eventually became distressed and had to leave the hearing. AR 69.

"Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms . . . [and] with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Garrison*, 759 F.3d at 1017. The ALJ failed to contextualize Plaintiff's intermittent periods of improvement. This failure is especially serious when multiple parties, including several medical sources and Plaintiff herself, testified to the cyclical nature of Plaintiff's symptoms. Even if Plaintiff appeared to be "doing well" at the beginning of the administrative hearing, her rapid decompensation during the hearing should have alerted the ALJ that these periods of improvement are short-lived. In the proper context, Plaintiff's brief periods of "improvement" are not clear and convincing reasons to reject her subjective symptom testimony.

### 3. Non-compliance with Medical Treatment

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The ALJ cited Plaintiff's single report from December 2016 that "she had been on psychiatric medication for the past 4-5 years but was inconsistent in taking them up until the past six months" as a reason to reject Plaintiff's subjective symptom testimony. This is not a clear and convincing justification.

The ALJ did not consider whether Plaintiff had a "good reason" for her reported non-compliance. *See Carmickle*, 533 F.3d at 1162. An ALJ should consider "possible reasons [Plaintiff] may not comply with treatment or seek treatment consistent with the degree of [Plaintiff's] complaints." SSR 16-3p. The record evidence shows that any medication non-compliance was because of Plaintiff's mental health symptoms. In other words, Plaintiff may have lapsed because she could not track the many medications she was on, not because she was willfully ignoring treatment recommendations. Plaintiff stated that she has trouble remembering all her medications and that she needs help from friends and electronic reminders to take her medications. AR 368.

In 2014, during the period when Plaintiff was supposedly non-compliant, she sought emergency mental health care for suicidal ideation. AR 1724, 22. She went to the emergency room when she had could not take her medications because she could not find them—not because she did not want to take them. *Id.* This suggests that any non-compliance was not evidence that her symptoms were less severe than she alleged. Rather, Plaintiff's inability to

track and reliably take the multiple medications prescribed to her was another manifestation of her severe mental health symptoms.

### 4.  Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months

or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison*, 759 F.3d at 1017.

The ALJ found that Plaintiff's subjective symptom testimony conflicted with her "educational and vocational achievements." AR 21. He noted that Plaintiff periodically attended community college and founded Bailey's Bones and Wishes, a nonprofit to aid the pets of unhoused people. *Id.* He also observed that Plaintiff worked part time as a pet sitter. The ALJ did not, however, explain how Plaintiff's educational and vocational activities are inconsistent with her claimed limitations. *See Reddick*, 157 F.3d at 722. A closer examination of Plaintiff's activities of daily living reveals no inconsistencies. In fact, it shows Plaintiff's attempts to lead a normal life in the face of her limitations, and her inability to do so because of those limitations. It is legal error to "penalize[]" Plaintiff for her efforts. *Id.*

The ALJ cited Plaintiff's efforts to obtain an associate degree as a reason to reject her testimony. But none of these efforts led to success. Although Plaintiff began taking classes at Portland Community College in 2014, she was still 20 credits short of a degree as of the 2018 administrative hearing. AR 47. Even though she received special accommodations from the school—such as permission to bring her service dog and to leave class for unscheduled breaks when she felt overwhelmed—she still struggled in the classroom environment. AR 21. Campus security had to escort Plaintiff out of class three times because she was self-harming in class. AR 58. Plaintiff last took on-campus classes in 2017; since then she has only taken online classes. AR 48. Even online classes pose difficulties—she had originally enrolled in three online classes but had to withdraw from all but one of them. AR 46.

The ALJ also cited Plaintiff's part-time pet-sitting and nonprofit work as incompatible with her claimed limitations. Again, the Court sees no actual conflict and therefore no reason to

reject Plaintiff's subjective symptom testimony. The mere fact that Plaintiff worked part-time is insufficient because part-time work is not inherently compatible with disability. *See Carmickle*, 533 F.3d at 1161-62 (holding that holding oneself out as available for part-time employment is not necessarily inconsistent with disability). The ALJ erroneously stated that Plaintiff oversaw "half a dozen volunteers" at her nonprofit. AR 26. Plaintiff never stated that she supervised any volunteers—she testified that "the volunteers would go and be there and give out information and also pet food." AR 49. Plaintiff did not manage the nonprofit's website, a friend of hers handled the nonprofit's Facebook page, and Plaintiff ultimately "had to step back" from her nonprofit work because of her functional limits. AR 50-51. Also, Plaintiff's income from pet-sitting never rose to the level of substantial gainful activity. AR 248, 261, 313, 334. Plaintiff's limitations severely hindered her ability to pet-sit even at a level below substantial gainful activity. One of Plaintiff's friends testified that she had to fill in for Plaintiff 37 times during a 10-month period because Plaintiff could not complete a pet-sitting job. AR 418. Given that Plaintiff's limitations made it functionally impossible to attend school or meaningfully work, it was legal error for the ALJ to cite Plaintiff's "educational and vocational achievements" as a reason to reject her subjective symptom testimony.

**B.  Medical Source Opinion of Plaintiff's Treating Psychologist, Dr. Michaels**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at 1012. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan*, 246 F.3d at 1202. If a treating physician's opinion is supported by medically acceptable techniques and is not

inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2) (applicable to claims filed before March 27, 2017). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison*¸ 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-

examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Dr. Michaels is one of Plaintiff's treating psychologists.[3] He saw Plaintiff for weekly individual and group therapy from July 2015 to early 2017. He provided a medical source statement in April 2018. Throughout his long relationship with Plaintiff, Dr. Michaels "developed a deep understanding of [her], her functioning, and her limitations." AR 1668. He noted that Plaintiff is "highly engaged in her care" and that she "throws herself into her efforts with all her heart, and a with a deep desire to improve her functioning, be successful and contribute to society." *Id*. Dr. Michaels reported that despite her efforts, Plaintiff unfortunately has not succeeded. *Id.* Dr. Michaels observed "periods of improvement followed by substantial decompensations." *Id.* Although he noted that Plaintiff is "able to accomplish wonderful things during her periods of stability," he specifically opined that Plaintiff's "periods of improved functionality do not demonstrate that she is improved or not as limited as she states." *Id.* In Dr. Michaels' opinion, Plaintiff's periods of stability are "never long enough that she would be able to sustain in a full-time work setting." AR 1669. Ultimately, Dr. Michaels believed that Plaintiff could work only in "complete isolation from all co-workers and public." AR 1668. Even

---

[3] The standard for discounting the medical source opinion of a treating psychologist is the same as the standard for discounting the medical source opinion of a treating physician because both psychologists and physicians are acceptable medical sources. *See* SSR 06-03p (classifying both doctors and psychologists are acceptable medical sources); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) (applying the standard for discounting the opinion of a "treating medical doctor" to assess the opinion of a treating psychologist).

PAGE 18 – OPINION AND ORDER

then, she would need a "supportive supervisor" and would still "decompensate frequently enough to miss well over two workdays each month, on average." AR 1669.

The ALJ gave Dr. Michaels' medical source opinion "little weight" because of the "absence of psychiatric hospitalizations or suicide attempts," Plaintiff's "ability to attend school," "conduct a pet sitting business and create and run a non-profit . . . overseeing a half dozen volunteers," "improvement with medication," and "non-compliance with medication treatment through 2016." AR 26. Because Dr. Michaels is a treating source, the question is whether any of these justifications are "specific and legitimate" reasons to discount Dr. Michaels' opinion. *Ryan*, 521 F.3d at 1198. Plaintiff argues that they are not. The Court agrees.

"Absence of psychiatric hospitalizations or suicide attempts," Plaintiff's "ability to attend school," "conduct a pet sitting business and create and run a non-profit . . . overseeing a half dozen volunteers," "improvement with medication," and "non-compliance with medication treatment through 2016" are not specific and legitimate reasons to reject the treating medical source opinion of Dr. Michaels. These arguments do not justify rejecting Dr. Michaels' opinion for the same reasons they were inadequate to reject Plaintiff's subjective symptom testimony as discussed above. No court has held that absence of psychiatric hospitalizations or suicide attempts is a reason to reject the treating medical source opinion of a physician, no less a treating psychologist who is presumably best positioned to evaluate the significance of these events. Inconsistency between a medical source statement and a claimant's activities of daily living may be a specific and legitimate reason to reject a medical source opinion. *See Morgan*, 169 F.3d 600-02. But as with Plaintiff's subjective symptom testimony, the ALJ cited no actual conflicts between Dr. Michaels' opinion and Plaintiff's activities of daily living. Finally, Plaintiff's

purported "non-compliance" and "improvement" are not supported by substantial evidence, as discussed above.

The ALJ committed further error by not analyzing Dr. Michaels' opinion as that of an acceptable treating medical source. The ALJ acknowledged that Dr. Michaels treated Plaintiff weekly for almost two years. But the ALJ did not account for the length and depth of the therapeutic relationship in his opinion. ALJs must consider the nature of the treatment relationship when evaluating medical source opinions. "Even when contradicted, a treating . . . physician's opinion is still owed deference and will often be entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Garrison*, 759 F.3d at 1012 (quotation marks omitted). In weighing the medical opinion of a treating physician or psychologist, the ALJ must also consider factors such as the length of the treatment relationship and frequency of examination, the amount of knowledge the doctor had about the patient, the amount of evidence supporting the opinion, and consistency with the record as a whole. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (remanding case because ALJ did not considers the factors listed in § 404.1527(c)(2)-(6)). The ALJ did not defer to Dr. Michaels' opinion and did not mention the § 404.1527 factors at all. He favored the opinions of the non-examining state agency consultants, even though "[t]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan*, 169 F.3d at 602. The ALJ's claim that "the overall medical evidence record, including routine and conservative treatment for [Plaintiff's] physical impairments" buttressed

the opinions of the state agency consultants is not supported by substantial evidence, as

discussed above. AR 27.[4]

## C.  Credit-as-True" Framework

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d

1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the

agency for additional investigation or explanation, a court has discretion to remand for

immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-

1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award

benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been

improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security

Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this

Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether

the ALJ made a legal error and then reviews the record as a whole to determine whether the

record is fully developed, the record is free from conflicts and ambiguities, and there is any

useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Only if the record has been fully developed and there are no outstanding issues left to be

resolved does the district court consider whether the ALJ would be required to find the claimant

disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the

district court can exercise its discretion to remand for an award of benefits. *Id.* The district court

---

[4] Notably, Plaintiff does not claim disability because of any physical impairments.

retains flexibility, however, and need not credit statements as true only because the ALJ made a legal error. *Id.* at 408.

The Court finds that there are no conflicts among Plaintiff's subjective symptom testimony, the medical source opinion of Dr. Michaels, the three non-acceptable medical source opinions, and the lay witness testimony. The Commissioner argues that Plaintiff "cannot establish the rare circumstances necessary for a deviation from the ordinary remand rule, making a finding of disability inappropriate." ECF 12 at 10. But the Commissioner does not identify any "outstanding issues on which furthers proceedings in the administrative court would be useful." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). Once the Court accounts for the ALJ's errors, the record is remarkably consistent. The Court has also reviewed the other evidence the ALJ considered and finds no significant conflicts or ambiguities therein.

The non-acceptable medical source statements of Ms. Shah-Johnson, Ms. Davis, and Ms. Phillips are consistent with Plaintiff's subjective symptom testimony and the treating medical source opinion of Dr. Michaels. For example. Ms. Shah-Johnson noted Plaintiff's strong desire to be independent but described her "strong urges to self-harm" and multiple episodes of decompensation during therapy sessions. AR 1720. Echoing Dr. Michaels opinion, she stated that "unfortunately, in each instance, [Plaintiff] has discovered her limits, and has had to learn to avoid pushing herself to the point of decompensation." *Id.* She also opined that Plaintiff "is at her upper limit for work activity in her part-time and flexible self-employment." AR 1721.

The ALJ gave "little weight" to all three sources because of the reasons "detailed above in conjunction with Dr. Michaels' opinion" and because "[N]one of the providers is a medically acceptable source." AR 27. The cursory treatment of Ms. Shah-Johnson's opinion is especially concerning because she has treated Plaintiff since 2014. After applying the factors for weighing

opinion evidence, an ALJ may properly find that an opinion from a medical source who is not an

"acceptable medical source" outweighs the opinion of the "acceptable medical source":

> For example, it may be appropriate to give more weight to the
> opinion of a medical source who is not an acceptable medical
> source if he or she has seen the individual more often than the
> treating source and has provided better supporting evidence and a
> better explanation for his or her opinion.

*Id.*[5] The ALJ here applied none of the § 404.1527 factors to evaluate Ms. Shah-Johnson's non-

acceptable medical source opinion. Instead, the ALJ relied on the same flawed reasons he used to

reject Plaintiff's subjective symptom testimony and the treating medical source opinion of Dr.

Michaels. The Court does not address whether the ALJ committed harmful legal error here but

notes that the testimony of Ms. Shah-Johnson, the two other non-acceptable medical sources, and

the lay witness testimony each present no conflicts requiring further proceedings.

A finding of disability is required when the Court credits Plaintiff's improperly rejected

subjective symptom testimony and the improperly rejected medical opinion of Dr. Michaels. Dr.

Michaels opined that Plaintiff would miss at least two days of work each month. AR 1669. At

the administrative hearing, the VE testified that "a worker having this ongoing, monthly

absenteeism could not sustain all unskilled, full-time employment." AR 71. Dr. Michaels also

stated that Plaintiff would have to work in "complete isolation." AR 1668. The VE stated that he

"would not be able to proffer sample occupations" meeting that criteria. AR 72. The record

requires a finding of disability.

"Serious doubt" may exist when "the government has pointed to evidence in the record

that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's

---

[5] Giving more weight to the opinion of a non-acceptable medical source over a treating
medical source does not violate the treating source rules under 20 C.F.R. § 404.1527(d)(2).

claim to be disabled," even if the ALJ did not consider that evidence at the hearing.

*Dominguez*, 808 F.3d at 407 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)).

Nothing in the ALJ's opinion or the medical record raises serious doubt that Plaintiff is disabled.

And the Commissioner points to no evidence that the ALJ overlooked.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND

REMANDED for an immediate calculation and payment of benefits.

**IT IS SO ORDERED**.

DATED this 17th day of August, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge